J-S53029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: J.Z.Z.D.J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.J., NATURAL FATHER | No. 629 WDA 2014 |

Appeal from the decree entered March 17, 2014,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): No. 77 in Adoption 2013

BEFORE: DONOHUE, OLSON, and PLATT*, JJ.

MEMORANDUM BY OLSON, J.: **FILED OCTOBER 30, 2014**

C.J. ("Father"), appeals from the trial court decree entered on March 17, 2014, involuntarily terminating his parental rights to his minor, dependent, female child, J.Z.Z.D.J. ("Child"), born in April of 2009, pursuant to section 2511(a)(2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).[1] We affirm.

On October 14, 2013, the Erie County Office of Children and Youth ("OCY" or "the Agency") filed a petition for the involuntary termination of the parental rights of Father and Mother to Child. The trial court held a hearing

---

* Retired Senior Judge assigned to Superior Court.

[1] The trial court noted that Child's mother, B.C. ("Mother"), failed to appear at the hearing regarding the termination of her parental rights, despite the fact that she had been given notice, and that the evidence presented against her was uncontested and overwhelming. Trial Court Opinion, 4/28/14, at 2 n.1. Thus, on March 17, 2014, the trial court also entered a decree, dated March 14, 2014, terminating the parental rights of Mother to Child pursuant to section 2511(a)(1), (2), (5), (8), and (b). *Id.* Mother has not challenged the termination of her parental rights in a separate appeal, nor is she a party in this appeal.

on the petition on March 14, 2014, during which Father, who was incarcerated, was present. The guardian *ad litem* appointed for Child, Attorney Deanna Heasley, was also present.[2] At the hearing, OCY presented five witnesses, the first of whom was Christopher Kessler, Father's supervising parole office between 2007 and October 28, 2013. N.T., 3/14/14, at 14. Mr. Kessler testified that Father was re-incarcerated in October of 2013, and has a maximum parole date of August 20, 2019. *Id.* at 18. OCY then presented the testimony of Patty Bush, the OCY ongoing caseworker assigned to the family between November of 2011 and May of 2012. *Id.* at 20-21.

Next, OCY presented the testimony of Mary Bliley, who is currently an ongoing caseworker for OCY, and served as a social service aide for the family, providing transportation for visitation and supervised visits between Father and Child. *Id.* at 35-36. OCY then presented the testimony of Sharon Slubowski, an OCY caseworker for another of Father's children, Child's slightly older half-sister, U.J., who is also dependent, and to whom Father voluntarily relinquished his parental rights. *Id.* at 46, 49, 88, and 93. Finally, OCY presented the testimony of Michelle DuShole, who served as the OCY caseworker for the family from May 7, 2012 to the time of the

---

[2] The termination of Mother's parental rights to Child's half-brother, J.J.J.C., as well as the termination of the parental rights of J.J.J.C.'s father, A.K., also were addressed on March 14, 2014. Neither Mother nor A.K. appeared to challenge the termination of their parental rights to J.J.J.C., despite notice. *See* N.T., 3/14/14, at 5 and 8-10.

termination hearing. *Id.* at 51. She testified that Child and her half-brother, J.J.J.C., have been in the same pre-adoptive foster home of P.C. and M.A.C. since November of 2011. *Id.* at 56.

Father presented the testimony of his girlfriend, L.R. *Id.* at 70. Father also presented the testimony of D.S., his first cousin; and B.L.H., his maternal grandmother. *Id.* at 77, 80. Additionally, Father testified on his own behalf. *Id.* at 85. Father testified that he has a son. *Id.* at 88. He also had a second daughter, to whom he voluntarily relinquished his parental rights. *Id.* at 95.

OCY called Patty Bush, Mary Bliley, and Michelle DuShole on re-direct examination. The trial court admitted a number of exhibits offered by OCY, including Child's juvenile court records, and Father's criminal history. *Id.* at 8-12; Petitioner's Exhibits 1-21. The trial court also admitted the sole exhibit offered by Father, a certificate of achievement from a Foundations of Fatherhood workshop. *Id.* at 13; Defendant's Exhibit A.

In its opinion entered on April 28, 2014, the trial court fully set forth the factual background and procedural history of this appeal, which we adopt herein. The trial court considered the history of the case, including Father's failure/neglect as a parent to Child from the time of her birth in April of 2009 until she was placed in shelter care on November 2, 2011. Trial Court Opinion, 4/28/14, at 6. The trial court found that, although it was unclear when Father became aware of Child's existence, he knew of her at the time

of the dependency adjudication for Child on November 29, 2011. ***Id.*** The trial court stated that, at the dependency adjudication hearing, Father stipulated to Child's dependency without explaining his lack of involvement in parenting or why Mother had left Child in the care of a teenager before Child's placement. ***Id.***

The trial court found that Father made progress under the plan to reunify him with Child, by completing parenting classes on April 19, 2012, and completing a mental health assessment. ***Id.*** at 7. Although Father did not look for a job, his visits with Child went well, and OCY permitted him to keep Child for overnight visitation. ***Id.*** However, the trial court found that Father's progress was washed out by his drug screen results beginning in 2012, which included several dilute positives for drugs, and numerous no-show positives because of his incarceration. ***Id.*** The trial court found that Father lost the privilege of visiting Child several times for several months in 2012 because of his failures to comply completely with urine testing. ***Id.*** at 8.

The trial court stated as follows:

> Complicating matters for [] Father is the amount of time he spent in and out of prison following the date of the Adjudication Hearing on November 29, 2011 [through] the day of the Adjudication Hearing on March 13, 2014. He is currently serving an aggregate state sentence of [41] months to [91] months with credit for [647] days imposed October 28, 2013 on two separate charges from 2006 and 2013. That sentence is also part of a probation revocation proceeding. He may or may not be eligible for parole in 2015; his maximum date is August 20, 2019. Father's

- 4 -

> Criminal History Exhibit 19; IVT Hearing Transcript, 3/14/14, [at] 15-18.
>
> One additional point to note about Father's criminal history is that his last conviction stems from a domestic violence incident on February 26, 2013, a cause of concern to the Agency, particularly in light of his past history with the Agency and an ICC [Indirect Criminal Contempt] violation predating the birth of [C]hild by approximately a year. The criminal charge resulted in a suspension of visitation. Father has not seen or been in contact with his daughter since. IVT Hearing Transcript, 3/14/14, [at 16 and] 61.
>
> At the conclusion of the Agency's case at the termination hearing, Father offered three witnesses before Father testified. The court finds [that] none of the witnesses were credible or offered any evidence of value that would assist the court in resolving the issues before it, particularly on the issue of whether a bond existed between Father and Child in light of his incarceration.
>
> Father's testimony likewise was not credible. Of particular note to the court were the poor excuses he offered for his failure to at least try to maintain some contact or relationship with his daughter while he remains incarcerated. Father was simply not convincing in his attempt to place blame on his last caseworker for the lack of contact or for blaming his inattentiveness to lack of resources. Likewise, he offered nothing to convince the court a strong bond existed with his child. IVT Hearing Transcript, 3/14/14, pp. 89-90, 94.

Trial Court Opinion, 4/28/14, at 8-9.

On March 17, 2014, the trial court entered the decree terminating Father's parental rights. On April 14, 2014, Father filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues:

> 1. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in involuntarily terminating Appellant's parental rights pursuant to § 2511(a)(2), (5), and (8) when the conditions that led to the removal of [C]hild had been remedied and the only barrier to the Appellant assuming proper parental care and control of [C]hild that exists is the incarceration of the Appellant[?]
>
> 2. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in involuntarily terminating [] Appellant's parental rights pursuant to § 2511(b) when the statutory requirements for termination had not been met, [C]hild was bonded to the Appellant and such finding was contrary to the best interests of [C]hild[?]

Father's Brief at 5.[3]

With regard to his first issue, Father argues that the trial court erred in terminating his parental rights under section 2511(a)(2), (5), and (8), when the evidence did not demonstrate that the conditions that led to Child's removal from the home continued to exist. Rather, he contends that he has remedied all of the conditions that led to the initial removal of Child, and that the only barrier to his assuming proper parental care and control of Child is his incarceration. Father claims that he has done everything OCY requested of him, and that he has remedied the concerns about his mental health, lack of employment, and history of substance abuse. Father urges that, until his incarceration in February of 2013, he was doing so well that he

---

[3] Although Father's issues are not identical to those raised in his concise statement of errors complained of on appeal, we find them sufficiently suggested by the issues he raised in his concise statement so as to be preserved for this Court's review. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

- 6 -

had custody of Child on the weekends, and that there was a strong bond between Child and him. Father claims that his visits with Child were stopped solely because of his incarceration.

Additionally, Father states that he is scheduled to be released from prison on July 21, 2015. He acknowledges that he has had little or no contact with Child while he has been incarcerated, but he asserts that he has continued to inquire about Child and to demonstrate a genuine desire to be a parent to her. Father claims that the only reason he cannot parent Child is his incarceration, and that, under Pennsylvania law, incarceration alone is not grounds for the termination of his parental rights.

We review the appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As [the Pennsylvania Supreme Court] discussed in [*In re: R.J.T.*, 9 A.3d 1179 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-

specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.*, quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Father's parental rights under section 2511(a)(2), (5), (8) and (b). We will analyze the trial court's decision to

terminate Father's parental rights under section 2511(a)(2) and (b). These sections provide:

### § 2511. Grounds for involuntary termination

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have stated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or

mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (internal citations omitted).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

[Section] 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d at 827 (internal citations and some internal quotations omitted).

Moreover, our Supreme Court instructed:

[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and [] the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828.

- 10 -

After re-visiting its decision in **In re: R.I.S.**, 36 A.3d 567 (Pa. 2011),

regarding incarcerated parents, the Supreme Court stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). **See e.g. Adoption of J.J.**, 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [**In re:**] **E.A.P.**, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

**In re Adoption of S.P.**, 47 A.3d at 830-31.

The trial court provided the following analysis of section 2511(a)(2):

> Father's status as an inmate in a state prison is the sole reason for his incapacity; it will not be remedied any time soon. Since the [Dependency] Adjudication Hearing on November 29, 2011 up to the day of the IVT [involuntary termination] hearing on March 14, 2014[,] he has been in and out of jail. Currently he is serving an aggregate sentence of [41] to [91] months [in prison,] with credit for [647] days in state prison. He received the sentence on

October 13, 2013, five months before the IVT hearing on two separate charges from 2006 to 2013. The charge in 2013 involved an incident of domestic violence. The sentence is part of a probation revocation proceeding. Though Father claimed he would be paroled in 2015[,] there was no credible evidence presented either in the form of documents from the Parole Board or his parole officer to prove that time frame is accurate. Even if 2015 is the correct date . . . , 2015 is only the year he may become **eligible** for parole, not that he necessarily will [be released on parole]. 2015 is also eight months in the future. At best, therefore, it could be close to a year before he is free once more to attempt to reunite with his daughter, assuming he is not paroled to a half-way house and is able to immediately find a job and satisfactory housing for himself and his daughter. Keeping in mind [C]hild was four years old at the time of the IVT hearing, it is a simple matter of mathematics to conclude Father has been incarcerated and incapacitated the majority of [C]hild's life, including the last thirteen consecutive months.

Incarceration, while not a litmus test for termination, can be determinative if the question of whether a parent is incapable of providing "essential parental care, control or subsistence, and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and cause[s] of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***In re Adoption of S.P.***, 47 A.3d 817 (Pa. 2012).

Here, Father's incarceration resulted in long gaps in his ability to visit with [C]hild, negating what progress he clearly made forming a bond with his daughter when he was permitted to see her following adjudication. Twice, according to testimony from Agency workers, he was on the verge of reunification with his daughter but lost the opportunity at least once because he had been arrested.

In addition to the significant length of time Father has spent in jail since the birth of [C]hild, [the trial court] also considered the reasons for the incarceration. . . . Father remains imprisoned in part because he was revoked from probation, strong evidence he does not follow the directives of his probation officer or complete programs designed with

his rehabilitation in mind. Given his propensity to ignore rules created with his best interests in mind, and the length of time passing since the [dependency] adjudication of his daughter, the record supports a finding that Father cannot or will not remedy the conditions which led to placement of [C]hild[,] and that the services made reasonably available to him are not likely, and in fact failed, to remedy, in a reasonable amount of time, the conditions which led to placement.

The failure of Father to comply with drug urine analysis appointments provides more evidence of Father's inability to remedy the conditions which led to the placement. It is an example of his disregard of the rules he needed to follow to be reunified with his daughter, particularly when the violations resulted in the loss of visitation with her for extended times, and[,] more important, the opportunity for reunification.

An episode of domestic violence on February 26, 2013 . . . led to his arrest and incarceration[,] and plea to a simple assault charge later that year, in effect negating all progress he made with the Agency towards reunification with [C]hild. Because of his actions[,] he has not seen [C]hild since.

Trial Court Opinion, 4/28/14, at 10-12 (some internal citations omitted).

In ***In re Adoption of Michael J.C.***, 486 A.2d 371 (Pa. 1984), our

Supreme Court held as follows:

When a parent has demonstrated a continued inability to conduct his or her life in a fashion that would provide a safe environment for a child, whether that child is living with the parent or not, and the behavior of the parent is irremediable as supported by clear and competent evidence, the termination of parental rights is justified.

***Id.*** at 375.

This Court has stated that a parent is required to make diligent efforts

towards the reasonably prompt assumption of full parental responsibilities.

***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to

- 13 -

cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340. The evidence demonstrated that Father's continued incapacity, abuse, neglect or refusal to parent could not or would not be remedied, despite OCY's offering reasonable efforts to assist in his reunification with Child.

Father's argument regarding section 2511(a)(2) essentially requests this Court to make credibility and weight determinations different from those of the trial court. *In re Adoption of S.P.*, 47 A.3d at 826-27. Father claims to love Child and requests another chance to parent her. *See* N.T., 3/14/14, at 88 and 91. A parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights, however. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by

competent evidence in the record. ***In re Adoption of S.P.***, 616 Pa. at 325-326, 47 A.3d at 826-827. Father cannot now shift the blame to OCY for his failure to parent Child. Accordingly, we find that the trial court's determinations regarding section 2511(a)(2) are supported by sufficient, competent evidence in the record.

After having determined that the requirements of section 2511(a) were satisfied, we proceed to review whether the requirements of subsection (b) were satisfied. ***See In re Adoption of C.L.G.***, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). ***Id.*** at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993), the Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***See also In re: T.S.M.***, 71 A.3d 251, 267 (2013).

Father argues that OCY failed to satisfy its initial burden of establishing that termination was appropriate under section 2511(a). Therefore, Father contends that a discussion of Child's best interests is irrelevant. Father, however, declares that the trial court ignored the OCY caseworkers' acknowledgement that a bond exists between Father and Child. *See* Father's Brief at 19-20.

The trial court found as follows:

> The record reflects [that] Father had no relationship with [C]hild or involvement in her life from the time of her birth [in April of 2009] until the date of the Adjudication Hearing on November 29, 2011, a period of more than two and a half years. He appeared with counsel at the Adjudication Hearing and stipulated to the dependency of [C]hild even though he played no role in the actions leading to [C]hild's detention on November 2, 2011. He made no offer to take care of his daughter, or request she at least be placed with a relative who could help him parent her. Instead, he stipulated to the necessity of continued foster placement. [C]hild was [thus] placed in the foster home with the foster parents who have cared for her since.
>
> Once Child was in foster care, however, Father initially made efforts to establish a bond with her, for a time visiting with her consistently and impressing Agency workers enough where reunification was considered twice, the first time before the first permanency hearing on May 7, 2012. However, because he did not appear for a urine screen in April and because [his urine] was dilute on May 3, visits stopped. Father lost visiting privileges several more times for several months in 2012 because he failed to comply with urine testing.
>
> The inability of Father to comply with a simple order to take a test to determine if he was drug free, especially when he knew that failure to do so would result in loss of visitation with his daughter for [a] significant period of time, makes it impossible to accept any of his testimony about the bond he

feels exists between [him] and his daughter. It also makes it difficult to credit his assertions he cares for his daughter, wants to be a part of her life, and will take the steps necessary to make that a reality.

The year 2012 was not the only time Father failed to take advantage of the opportunities to bond with Child. He was arrested on February 26, 2013 as discussed[,] and has not seen his daughter since.

While incarcerated he made no effort to maintain contact with her. He has not sent her birthday cards[] or presents; he has not attempted to phone her from prison or inquire about the possibility of visits. He claimed during his testimony he had no resources to do anything to maintain a bond, but that excuse is flimsy at best and one more example of the excuses he uses to rationalize his lack of real effort.

Whatever positive bond that existed in 2012 when Father was not in jail and was visiting with Child was short lived and now too remote in time for the court to give any great weight to it. All gains made were more than offset by Father's lack of compliance with the drug testing and his last run-in with the law which resulted in large amounts of time Father was not permitted to see [] Child.

Since the day of her detention on November 2, 2011, [C]hild has been in the same foster home with the same foster parents who provide for her and meet her physical and emotional needs. The evidence was uncontested Child was doing well under their care. If [C]hild has any strong bond it would be with people who have provided for her and kept her safe the majority of her young life. The foster parents are the only people she knows as her parents. Given this, it would be severely traumatic and cause irreparable harm to a now five[-]year[-]old child if the court were to cut that relationship in favor of a [f]ather who has no bond with her, has failed to care for her, [sic] or create an equally strong bond, and who, when given every opportunity over an extended period of time to prove he is capable of being a good parent, demonstrated he is not up to the task.

- 17 -

. . .

While there was no affirmative act on the part of Father that resulted in the adjudication [of dependency] and placement of [C]hild, his continued incarceration and failure to comply with the court[-]ordered treatment plan[,] specifically the drug component, caused her to remain in placement much longer than necessary, contrary to her best interests. The lack of a strong bond between Father and Child, and [F]ather's failure[,] while he remains in prison[,] to make any effort to create or maintain the bond established when he was permitted to visit [C]hild further lead to the conclusion it is in [C]hild's best interests to terminate [Father's] parental rights.

Trial Court Opinion, 4/28/14, at 14-17 (internal citations omitted).

The trial court found that Father had not provided for Child's developmental, physical, and emotional needs and welfare, and will not be able to provide for Child's needs, particularly because of Father's failure to provide a stable and appropriate home for Child because of his incarceration, and his lack of effort to maintain significant contact with Child. Trial Court Opinion, 4/28/14, at 14-17. Further, the trial court found that there is no strong bond between Child and Father. *Id.* at 16. The trial court found that the termination of Father's parental rights would be in the best interests of Child. *Id.* at 17.

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is

attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Here, Father failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). The trial court properly found from the evidence that Father, because of his absence from Child's life, did not put himself in a position to develop a real bond with Child. Trial Court Opinion, 4/28/14, at 16-17; *see In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

Additionally, as part of its bonding analysis, the trial court appropriately examined Child's relationship with her foster parents. *See In re: T.S.M.*, 71 A.3d at 267-268 (stating that existence of a bond attachment of a child to a parent will not necessarily result in the denial of a termination petition, and the court must consider whether the child has a bond with the foster parents). The trial court found that Child has a bond with her foster parents, who are pre-adoptive, and have served as her parents since her adjudication of dependency.

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Father, we conclude that the trial court did not abuse its discretion as to section 2511(b). *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the decree terminating Father's parental rights to Child.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2014